# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| ITZA JUDITH DIAZ DE LEON,<br>　　　　　*Plaintiff*, | §<br>§<br>§ | |
| | §<br>§ | **EP-18-CV-00185-RFC** |
| **-vs-** | §<br>§ | |
| NANCY A. BERRYHILL, ACTING<br>COMMISSIONER OF SOCIAL SECURITY<br>ADMINISTRATION,[1]<br>　　　　　*Defendant*. | §<br>§<br>§ | |

## MEMORANDUM OPINION AND ORDER

Plaintiff appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her claims for disability insurance benefits ("DIB") under Title II of the Social Security Act and supplemental security income ("SSI") under Title XVI of the Social Security Act. Both parties consented to trial on the merits before a United States Magistrate Judge, and the case was transferred to this Court for trial and entry of judgment pursuant to 28 U.S.C. § 636(c) and Appendix C to the Local Court Rules of this district. For the reasons set forth below, this Court orders that the Commissioner's decision be **AFFIRMED**.

## PROCEDURAL HISTORY

On August 21, 2015, Plaintiff filed an application for DIB and an application for SSI alleging a disability onset date of September 4, 2014. (R:182, 190). Plaintiff's applications were denied initially on November 4, 2015, and upon reconsideration on March 1, 2016. (R:104, 115).

---

[1] On March 6, 2018, the Government Accountability Office determined that Nancy Berryhill's continued service as Acting Commissioner of Social Security violated the Federal Vacancies Reform Act of 1998. GOVERNMENT ACCOUNTABILITY OFFICE, Violation of the Time Limit Imposed by the Federal Vacancies Reform Act of 1998—Commissioner, Social Security Administration (2018), https://www.gao.gov/assets/700/690502.pdf. Accordingly, this position is now vacant.

On May 8, 2017, a *de novo* hearing was held before an administrative law judge ("ALJ"), and the

ALJ issued an unfavorable decision on September 5, 2017, denying benefits. (R: 24, 30). The

Appeals Council subsequently denied Plaintiff's request for review on April 23, 2018. (R:1).

## ISSUES

Plaintiff presents the following issues for review:

1. Whether the ALJ erred in his determination of Plaintiff's physical limitations;
2. Whether the ALJ erred in his evaluation of Dr. Francisco Gonzalez's opinion;
3. Whether the ALJ erred by concluding that Plaintiff's impairment or combination of impairments did not meet one of the listed impairments; and
4. Whether the ALJ erred in formulating Plaintiff's residual functional capacity ("RFC").

(ECF. No. 19).

## DISCUSSION

### A. Standard of Review

This Court's review is limited to a determination of whether the Commissioner's final

decision is supported by substantial evidence on the record as a whole and whether the

Commissioner applied the proper legal standards in evaluating the evidence. *See Martinez v.*

*Chater*, 64 F.3d 172, 173 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir.

1994). Substantial evidence is more than a scintilla, but less than a preponderance, and is such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Ripley*

*v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). A finding of no substantial evidence will be made

only where there is a "conspicuous absence of credible choices" or "no contrary medical

evidence." *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (citing *Hames v. Heckler*, 707

F.2d 162, 164 (5th Cir. 1983)). In reviewing the substantiality of the evidence, a court must

consider the record as a whole and "must take into account whatever in the record fairly detracts

from its weight." *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986) (quoting *Parsons v. Heckler*, 739 F.2d 1334, 1339 (8th Cir. 1984)).

If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. *Martinez*, 64 F.3d at 173. In applying the substantial evidence standard, a court must carefully examine the entire record, but may not reweigh the evidence or try the issues *de novo*. *Haywood v. Sullivan*, 888 F.2d 1463, 1466 (5th Cir. 1989). It may not substitute its own judgment "even if the evidence preponderates against the [Commissioner's] decision," because substantial evidence is less than a preponderance. *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). Conflicts in the evidence are for the Commissioner, and not the courts, to resolve. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993).

## B. Evaluation Process

Disability is defined as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ evaluates disability claims according to a sequential five-step process: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a medically determinable impairment(s) that is severe; (3) whether the claimant's impairment(s) meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart B, Appendix 1; (4) whether the impairment(s) prevent claimant from performing past relevant work; and (5) whether the impairment(s) prevent the claimant from doing any other work. 20 C.F.R. § 404.1520(4).

An individual applying for benefits bears the initial burden of proving that he is disabled for purposes of the Act. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). The claimant bears the burden of proof at the first four steps. Once met, the burden will then shift to the

Commissioner to show that there is other substantial gainful employment available that the claimant is capable of performing. *Harrell v. Bowen,* 862 F.2d 471, 475 (5th Cir.1988). If the Commissioner satisfies this burden, "the burden then shifts back to the claimant to prove that he is unable to perform the alternate work." *Selders*, 914 F.2d at 618 (citing *Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987)).

Here, at the first step, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 4, 2014, the alleged onset date. (R:12). At the second step, the ALJ found that Plaintiff had the following severe impairments: ventricular tachycardia, affective disorder, and anxiety disorder. (*Id*.). The ALJ also found Plaintiff's hyperlipidemia to be non-severe. (R:13). At the third step, the ALJ found that Plaintiff did not have an impairment or combinations of impairments that met or medically equaled the severity of one of the listed impairments. (*Id*.).

Before the fourth step, the ALJ found that Plaintiff was capable of performing light work. (R:15). Specifically, Plaintiff was found to be able to do the following: lift twenty pounds occasionally and ten pounds frequently; stand and /or walk for up to six hours in an eight-hour workday and sit for up to six hours in an eight-hour workday; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance; should avoid unprotected heights and the use of moving machinery; can understand, remember, and carry out detailed but not complex instructions; can make work-related decisions; can attend and concentrate for extended periods of up to two-hour intervals; can interact appropriately with the public, coworkers, and supervisors; and can respond appropriately to changes in a routine work setting. (R:15–16).

At the fourth step, the ALJ found that Plaintiff was unable to perform any past relevant work. (R:22). At the last step, considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. (R:23). The ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from September 4, 2014, through the date of the ALJ's decision. (R:24).

### C. Analysis

#### a. The ALJ did not err in determining Plaintiff's physical impairments

In Plaintiff's first contention, Plaintiff argues that the ALJ's findings regarding her physical limitations are inconsistent. (ECF. No. 19:3–6). Plaintiff argues that her impairments were not slight and the effects were not minimal, and thus, the ALJ's findings were contradictory. (ECF. No. 19:4). Plaintiff's argument is without merit.

At step two, the ALJ is only required to determine whether any identified impairments were severe or not severe, and all impairments, regardless of their designation, are considered in the ALJ's subsequent analysis. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Here, the ALJ considered all of Plaintiff's physical and mental impairments and properly concluded that they were severe and not slight or minimal. (*Id*.). Specifically, at step two, the ALJ found that Plaintiff had severe ventricular tachycardia, affective disorder, and anxiety disorder. (R:12).

Plaintiff also contends that her physical and mental impairments were more severe than what the ALJ determined, the ALJ ignored the medical opinion and diagnosis of Dr. Francisco Gonzalez, and her impairments should have met a listed impairment. (R: 5–6). Plaintiff briefed these points in her second, third, and fourth contentions. To avoid wasteful repetition, these points will be addressed then.

5

**b. The ALJ did not err in his evaluation of Plaintiff's treating physician**

In Plaintiff's second contention, Plaintiff argues that the ALJ failed to give Dr. Gonzalez's opinion controlling weight. (ECF. No.19:6–10). Specifically, Plaintiff argues that when the ALJ failed to give Dr. Gonzalez's opinion controlling weight, the ALJ erred by failing to discuss the six factors required by 20 C.F.R. § 404.1527(c)(2) and 20 C.F.R. § 416.927 (c)(2) because no examining or treating physician contradicted Dr. Gonzalez's opinion. (ECF. No.19:6–10). Plaintiff also argues that in the alternative, the ALJ erred by failing to give Dr. Gonzalez's opinion extra weight because he is a specialist. (*Id.* at 9).

Ordinarily, a treating physician's opinion should be given controlling weight if it is: (1) well-supported by medically acceptable clinical and laboratory diagnostics techniques; and (2) not inconsistent with other substantial evidence. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *Thomas v. Astrue*, 227 F. App'x 350, 353 (5th Cir. 2008). However, a treating physician's opinions are not conclusive. *Perez v. Barnhart*, 415 F.3d 457, 466 (5th Cir. 2005). The ALJ may assign little or no weight to the opinion of any physician for good cause. *Newton,* 209 F.3d at 455–56. Good cause exists where statements are "brief and conclusory, not supported by medically acceptable clinical laboratory diagnostics techniques, or otherwise unsupported by evidence." *Perez,* 415 F.3d at 466.

Absent reliable medical evidence from a treating or examining physician controverting the claimant's treatment specialist, an ALJ may reject the opinion of a treating physician only if the ALJ performs a detailed analysis under the applicable federal regulation. *Newton*, F.2d at 453. Specifically, the regulation requires the consideration of:

1. Length of the treatment relationship and the frequency of examination;
2. Nature and extent of the treatment relationship;
3. Supportability;
4. Consistency;

5. Specialization; and
6. Other factors that tend to support or contradict the opinion.

20 C.F.R. §§ 404.1527(c)(2), § 416.927 (c)(2).[2]

The record shows that Plaintiff saw Dr. Gonzalez, Plaintiff's treating cardiologist, multiple times in 2016. (R: 644–748). On November 10, 2016, Dr. Gonzalez filled out a Medical Source Statement ("MSS"). In the MSS, Dr. Gonzalez indicated that Plaintiff could perform the following: occasionally lift or carry up to ten pounds; sit for five hours in an eight-hour workday; stand for one hour in an eight-hour workday; walk for two hours in an eight-hour workday; continuously reach, handle, finger, feel, push, and pull with both hands; occasionally climb stairs, ramps, ladders, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; and occasionally tolerate exposure to various environmental limitations. (R:742–48). Dr. Gonzalez's findings in his MSS were significantly more limiting than what the ALJ ultimately concluded, and the ALJ gave Dr. Gonzalez's opinion little weight. (R:22).

The ALJ did not err because other examining physicians contradicted Dr. Gonzalez's opinion. First, on October 19, 2015, Plaintiff saw Dr. Augustine O. Eleje. (R:558–62). Dr. Eleje found that Plaintiff had a history of chest pain, atrial fibrillation, and ventricular tachycardia; however, Dr. Eleje concluded that Plaintiff had no limitations with sitting, standing, moving about, handling objects, lifting, carrying, hearing, and speaking. (R:561).

Second, on January 23, 2016, Plaintiff visited Dr. Juan Castro Combs. (R:569–74). Dr. Combs found that Plaintiff can sit normally in an 8-hour workday with normal breaks; had mild limitations with standing and mild to moderate limitations with walking; did not need an assistive device; had mild to moderate limitations with lifting and carrying weight; had no

---

[2] Plaintiff's application was filed prior to March 27, 2017, therefore the former rules for evaluating medical source opinions apply. *See* 20 C.F.R. § 404.1527.

limitations on bending, stooping, crouching, and squatting; no manipulative limitations on reaching, handing, feeling, grasping, and fingering; and no relevant visual, communicative, or work place environmental limitations. (R:573–74).

The opinions from Dr. Eleje and Dr. Combs both support the ALJ's decision. Both examining physicians indicated that Plaintiff was significantly less limited than what Dr. Gonzalez ultimately concluded in his MSS. Thus, the ALJ was not required to undergo the six-factor analysis. Similarly, because of Dr. Eleje's and Dr. Combs's opinions, the ALJ did not err by failing to give Dr. Gonzalez's opinion extra weight because he is a specialist. *Newton*, 209 F.3d at 453("[A]bsent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)"); *see also Holifield v. Astrue,* 402 F. App'x 24, 27–28 (5th Cir. 2010) (indicating that the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion).

Finally, embedded in Plaintiff's second contention, Plaintiff also argues that the ALJ failed to conduct a *de novo* hearing. (ECF. No. 19:9–10). The ALJ conducted a *de novo* hearing on May 8, 2017, with Plaintiff in attendance. (R: 30).

### c. Plaintiff did not have an impairment that met one of the listed impairments

Next, Plaintiff argues that her medical impairments, individually or in combination, should have met one of the listed impairments (ECF. No.19:10).

Listings criteria are demanding and stringent. *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994). At step three, the burden of proof rests with the claimant, and the claimant must show that her impairments meet all of the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530

(1990). An impairment that does not satisfy all of the requirements cannot qualify as a disability. *Id.* at 530.

At the second step, the ALJ found that Plaintiff had the following severe impairments: ventricular tachycardia, affective disorder, and anxiety disorder. (R:12). At the third step, the ALJ found that Plaintiff did not have an impairment or combinations of impairments that met or medically equaled the severity of one of the listed impairments. (R:13).

In reaching his decision, the ALJ considered if Plaintiff met the following for her ventricular tachycardia disease: chronic heart failure, 4.02; ischemic heart disease, 4.04; recurrent arrhythmias, 4.05; symptomatic congenital heart disease, 4.06; heart transplant, 4.09; aneurysm of aorta of major branches, 4.10; chronic venous insufficiency, 4.11; and peripheral arterial disease, 4.12. (*Id.*). For affective disorder and anxiety disorder, the ALJ considered the following: depressive, bipolar, and related disorders, 12.04; and anxiety and obsessive-compulsive disorder, 12.06. (*Id.*).

The ALJ's decision is supported by substantial evidence. While Plaintiff cites her medical history at length, especially her mental impairments and medication side effects, she does not show how she meets each of the required criteria under the listing. Accordingly, Plaintiff has not met her burden to demonstrate that her disability meets the criteria under the listing. *Zebley,* 493 U.S. at 530; *See Heck v. Colvin*, 674 F.App'x 411, 415 (5th Cir. 2017) (indicating that it is the Plaintiff's burden to demonstrate that her impairment met all of the listed criteria in the listing).

Finally, Plaintiff heavily cites the opinion of Dr. Alex Salazar, Plaintiff's psychiatrist at Emergency Health Network. (ECF. No 19:12–13). Although Plaintiff indicates that Dr. Salazar diagnosed her with depression (ECF. No. 19:12), Dr. Salazar's medical notes from Emergency

Health Network also indicated that Plaintiff was alert and oriented to person, place, time, and situation; Plaintiff's speech was clear, coherent and spontaneous, and soft spoken; Plaintiff's thought process was coherent; Plaintiff had no perceptual disturbances, no delusions, and no suicidal or homicidal thoughts; Plaintiff had normal attention span and concentration; Plaintiff had normal psychomotor activity; Plaintiff had grossly intact cognition; Plaintiff had good insight, judgment, and intellectual functionary and fund of knowledge; and Plaintiff had no issues with her memory. (R: 785–86). Thus, based on Dr. Salazar's medical notes, Plaintiff's mental impairments did not satisfy the severity requirement under paragraph B for sections 12.04 and 12.06 of the listing.

### d. The ALJ did not err in determining Plaintiff's RFC

In Plaintiff's last contention, Plaintiff argues that the ALJ's determination regarding Plaintiff's ability to perform light work is not supported by substantial evidence. (ECF. No 19:16–17). Specifically, the ALJ should have found Plaintiff unable to perform light work, the ALJ erred in forming his hypothetical to the vocational expert ("VE"), the ALJ failed to account for Plaintiff's medication side effects in formulating Plaintiff's RFC, the ALJ erred when he determined that Plaintiff could no longer perform her past relevant work, the ALJ erred by incorrectly listing the jobs provided by the VE as light, and the ALJ failed to incorporate Plaintiff's off-task percentage of 20 percent. (*Id.*).

### i. The ALJ's RFC determination is supported by substantial evidence

First, this Court will decide whether Plaintiff's RFC is supported by substantial evidence and whether the ALJ erred by failing to account for Plaintiff's medication side effects together.

The ALJ is responsible for determining a plaintiff's RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c). RFC is defined as "the most you can still do despite your limitations." 20 C.F.R. §§

404.1545(a)(1), 416.945(a)(1). In determining a plaintiff's RFC, the ALJ must consider all of the medically determinable impairments—including non-severe impairments—as well as all of the relevant medical and other evidence. 20 C.F.R. §§ 404.1545(a)(2)-(3), 416.945(a)(2)-(3).

Further, pursuant to SSR 96–8p, the RFC assessment "must be based on all of the relevant evidence in the case record," such as the effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication). As mentioned earlier, the ALJ found that Plaintiff was able to perform light work.[3] The applicable regulations define light work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 CFR §§ 404.1567(b), 416.967(b); *See also* SSR 83-10.

In this case, substantial evidence supports the ALJ's RFC determination. First, as mentioned previously, both Dr. Eleje's and Dr. Comb's medical opinions support the ALJ's determination regarding Plaintiff's physical capabilities. Further, medical notes from Dr. Gonzalez and from Dr. Salazar support the ALJ's determination regarding Plaintiff's mental capabilities. (R: 582–83, 598–99, 647–48, 738–39, 752–53, 762–63, 772–73, 785–86). For example, on August 4, 2016, Dr. Gonzalez indicated that Plaintiff denied having the following conditions: difficulty with concentration; poor balance; headaches; disturbances in coordination; numbness; inability to speak; sense of falling down, tingling; brief paralysis; visual disturbances; seizures; weakness; sensation of spinning room; tremors; fainting; excessive daytime sleeping

---

[3] The ALJ placed the following additional restrictions: occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance; avoid unprotected heights and the use of moving machinery; can understand, remember, and carry out detailed but not complex instructions; can make work-related decisions; can attend and concentrate for extended periods of up to two-hour intervals; can interact appropriately with public, coworkers, and supervisors; and can respond appropriately to changes in a routine work setting. (R:15–16).

and memory loss; having a sense of great danger; anxiety; suicidal thoughts; mental problems; depression; and thoughts of violence and frightening visions or sounds. (R:647). Finally, Dr. Gonzales also examined Plaintiff on that date and found her to be alert and cooperative, displayed normal mood and affect, and had normal attention span and concentration. (R:648). The medical records from Dr. Salazar and subsequent examination from Dr. Gonzalez mirrored Dr. Gonzalez's August 2016 findings. (R: 582–83, 598–99, 738–39, 752–53, 762–63, 772–73, 785–86).

Moreover, the record supports the ALJ's RFC determination. First, Plaintiff left her last job not because of her impairments, but due to the relocation of the company. Plaintiff did not seek subsequent employment. (R:17, 210, 564). Further, the record indicates that Plaintiff can perform certain cleaning chores, can cook to a limited degree, can walk and drive, can go shopping, can handle money, and her medication did provide her with relief in regards to her anxiety-related impairments, notwithstanding Plaintiff's asserted side effects. (R:234–39). While this Court is aware that some evidence supports Plaintiff's argument, in determining whether substantial evidence supports the ALJ's decision, this Court may not reweigh the evidence or try the issues *de novo*. *Haywood v. Sullivan*, 888 F.2d 1463, 1466 (5th Cir. 1989). Even if a preponderance of the evidence supports Plaintiff, this Court may not overturn the Commissioner's decision because substantial evidence is less than a preponderance. *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

Finally, the ALJ properly accounted for Plaintiff's medication side effects. At the hearing, Plaintiff discussed her medication side effects with the ALJ. (R:39–44). Plaintiff indicated that these medications caused fatigue, dizziness, and often left her in a zombie-like state. (*Id.*). Subsequently, the ALJ limited Plaintiff's physical and mental capabilities in his

hypotheticals to the VE (R:49–50). The ALJ also discussed these side effects in his opinion. (R:14, 16–17). Due to a mixture of Plaintiff's impairments and side effects from her medication, the ALJ found Plaintiff capable of performing a limited range of light work. (R:15–16). Ultimately, because of the contradictory evidence mentioned above, the ALJ concluded that Plaintiff was not disabled from all work activity.

### ii.   The ALJ did not err in formulating his hypothetical to the VE

Next, Plaintiff argues that the ALJ did not account for Plaintiff's depression, anxiety, and medication side effects when forming his hypotheticals to the VE. (ECF. No. 19:16). This argument is without merit.

In *Bowling v. Shalala*, the Fifth Circuit indicated that an ALJ's hypothetical to a VE is defective unless the hypothetical reasonably incorporated all disabilities the ALJ reasonably recognized and the claimant had a chance to cross-examine and to correct deficiencies in the hypothetical. 36 F.3d 431, 436 (5th Cir. 1994). An applicant waives his right to challenge a hypothetical on review if he does not address its deficiencies at the hearing. *Wise v. Barnhart*, 101 F.App'x. 950, 951 (5th Cir. 2004) (per curiam) (citing *Bowling*, 36 F.3d at 436); *but see Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001) (indicating that a claimant's failure to identify deficiencies at the hearing does not automatically salvage that hypothetical as a proper basis for a determination of non-disability).

In the present case, the ALJ reasonably incorporated Plaintiff's disabilities in his hypotheticals. In Plaintiff's testimony before the ALJ, Plaintiff indicated that both her mental and physical capabilities were limited due to her depression, anxiety, and medication side effects. (R:39–44). By limiting Plaintiff's physical and mental capabilities in his hypotheticals, the ALJ reasonably incorporated these limitations. (R:49–50). Further, the ALJ clearly considered

Plaintiff's depression, anxiety, and medication side effects when he determined that Plaintiff had severe ventricular tachycardia, affective disorder, and anxiety disorder at step two. (R: 12–13). The ALJ's subsequent RFC determination also mirrored the ALJ's hypotheticals and step-two findings. (R:15–16, 49–50). Finally, at the hearing, Plaintiff's counsel had the opportunity to point out and correct any inconsistencies or deficiencies in the ALJ's hypotheticals. Counsel failed to do so.

### iii. The ALJ did not err when he determined that Plaintiff could not perform her past relevant work

Plaintiff argues that the ALJ made inconsistent findings regarding Plaintiff's RFC and her past relevant work. (ECF. No 19:16). Specifically, the ALJ found Plaintiff capable of performing light work but the ALJ also determined that she could no longer perform her past relevant work, which was sedentary. (*Id.*).

Before filing her case, Plaintiff worked for State Farm. (R:38). The VE indicated that Plaintiff's employment at State Farm can be classified as sedentary with a Specific Vocational Preparation ("SVP") level of six. (R:49). In response to the ALJ's hypotheticals, covering both light and sedentary work, the VE responded with three jobs at the sedentary level with a SVP level of two. (*Id.*). The three jobs were: order clerk, sedentary, code 209.567-014; telephone information clerk, sedentary, code 237.367-046; and charge account clerk, sedentary, code 205.367-014. (R:49–50). In his opinion, the ALJ found Plaintiff capable of performing light work, and the ALJ also determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (R:15–16, 23–24).

The Dictionary of Occupational Titles ("DOT"), published by the United States Department of Labor, identifies the SVP required to perform a particular job. U. S. DEP'T OF LABOR, DICTIONARY OF OCCUPATIONAL TITLES (4th ed. 1991). SVP is defined as the amount of

time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. *Id*. at Appendix C. SVP is classified on a scale of one to nine, with level one requiring the shortest time and level nine requiring the longest. *Id*. However, as SSR 00–4p notes: "The DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings. A VE, VS, or other reliable source of occupational information may be able to provide more specific information about jobs or occupations than the DOT."

In this case, the ALJ did not make any inconsistent findings. As the Commissioner correctly points out, the ALJ indicated that Plaintiff cannot perform her past relevant work because of the mental demands. (ECF. No. 22:10). Plaintiff could still perform her past relevant work when accounting only for her physical capabilities. The jobs provided by the VE all contained a SVP level of two. Thus, due to the ALJ properly accounting for Plaintiff's mental capabilities, the ALJ's RFC determination of light work was not inconsistent with the ALJ's finding that Plaintiff could no longer perform her past relevant work, which was sedentary.

### iv. The ALJ committed harmless error

Plaintiff also argues that the ALJ incorrectly labeled the jobs provided by the VE as light work when the DOT and the VE listed the jobs as sedentary. (ECF. NO. 19:17, R:23).

In his hypotheticals, the ALJ covered both light and sedentary work. (R:49–52). In response to the ALJ's hypotheticals, the VE correctly listed the jobs as sedentary with a SVP level of two. (R:49–52). The ALJ relied on the VE's testimony to determine if there were alternative jobs that Plaintiff could perform. (R:23–24). While the ALJ incorrectly labeled these jobs as light, the ALJ found Plaintiff to be capable of light work. (R:15–16). Further, because the

ALJ determined that Plaintiff can perform light work, she should be able to perform sedentary work. *See* 20 C.F.R. §§ 404.1567, 416.967 (listing the requirements for light and sedentary work). In any event, because the actual exertion levels of those jobs were sedentary, Plaintiff can perform those jobs without any problems or concerns. Thus, the ALJ committed harmless error by incorrectly listing the jobs' exertion level.

### v. The ALJ did not err by failing to consider Plaintiff's off-task percentage of 20 percent

Finally, Plaintiff argues that the ALJ failed to "properly consider Plaintiff's off-task percentage of 20 percent." (ECF. No. 19:17). Again, this argument is without merit.

In the ALJ's examination of the VE, the VE indicated that generally an employee could be off task 15 percent of the workday and still maintain employment. (R:51–52). In cross examination by Plaintiff's counsel, the VE indicated that the same hypothetical employee could not be off task 20 percent of the workday and still maintain employment. (R:52–53).

The ALJ, however, never found that Plaintiff needed to be off task 20 percent of the time. Further, if Plaintiff argues that she required being off task 20 percent of the time, such argument also fails. As mentioned earlier, substantial evidence supports the ALJ's findings regarding Plaintiff's physical and mental capabilities. In conclusion, the ALJ did not err by failing to include Plaintiff's off-task percentage of 20 percent, and substantial evidence supports the ALJ's decision.

## CONCLUSION

Substantial evidence supports the ALJ's decision regarding Plaintiff's physical limitations, the ALJ's evaluation of Dr. Gonzalez's opinion, the ALJ's determination that Plaintiff's impairment or combination of impairments did not meet one of the listed impairments,

and the ALJ's RFC determination.  Based on the foregoing, the Court hereby **ORDERS** that the

decision of the Commissioner be **AFFIRMED**.

**SIGNED** this 31st day of January, 2019.

ROBERT F. CASTANEDA
UNITED STATES MAGISTRATE JUDGE